IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


TED L.,[1]                                            Case No. 6:24-cv-01308-HL

              Plaintiff,                              **OPINION AND ORDER**

       v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

              Defendant.

_____

HALLMAN, United States Magistrate Judge:

       Plaintiff Ted L. brings this action under the Social Security Act (the "Act"), 42 U.S.C. §

405(g), to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner denied Plaintiff's application for Disability Insurance

Benefits ("DIB") under Title II of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the

decision of the Commissioner is REVERSED and REMANDED for further proceedings.

_____

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name
for non-governmental parties and their immediate family members.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

I.     **Plaintiff's Application**

Plaintiff alleges disability based on ankylosing spondylitis, facet joint arthropathy, degenerative disc disease, sacroiliitis, diverticulitis and irritable bowel syndrome, trochanteric bursitis in both hips, arthritis in his spine, shoulders, hands, hips, knees, and feet, osteophytosis

in his spine, shoulders, hands, hips, knees, and feet, chest pain, sleep apnea, and shortness of breath. Tr. 84.[2] At the time of his alleged onset date, he was fifty years old. *Id.* He has a high school education. Tr. 44, 226. He has past relevant work as a marketing executive. Tr. 44.

Plaintiff protectively applied for DIB on March 16, 2022, alleging an onset date of July 31, 2021. Tr. 84. His application was denied initially on October 6, 2022, and on reconsideration on April 24, 2023. Tr. 90, 99. Plaintiff subsequently requested a hearing, which was held on January 16, 2024, before Administrative Law Judge ("ALJ") John Sullivan. Tr. 52-82. On February 22, 2024, ALJ Sullivan issued a decision denying Plaintiff's claim. Tr. 37-46. Plaintiff requested Appeals Council review, which was denied on June 11, 2024. Tr. 1-7. Plaintiff then sought review before this Court.[3]

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 8).

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 6).

PAGE 3 – OPINION AND ORDER

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 31, 2021, his alleged onset date. Tr. 39.

At step two, the ALJ determined that Plaintiff has the following severe impairments: ankylosing spondylitis, left shoulder degenerative joint disease, lumbar degenerative disc disease, obesity and cervical degenerative disc disease. *Id.*

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 40. The ALJ then resolved that Plaintiff had the RFC to do light work with the following limitations:

> [H]e can lift/carry [twenty pounds] occasionally and [ten pounds] frequently. He can push/pull as much as he can lift/carry. He can sit for [six] hours, stand and walk for no more than [six] hours in an [eight]-hour day. [Plaintiff] can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, stoop occasionally, kneel occasionally, crouch occasionally, crawl occasionally. [Plaintiff's] time off task can be accommodated by normal breaks.

Tr. 41

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a marketing executive. Tr. 44.

In the alternate, at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a ticket seller, toll bridge attendant, and parking lot attendant. Tr. 45. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 46.

## DISCUSSION

Plaintiff argues that the ALJ committed two errors: (1) failing to provide clear and convincing reasons to reject Plaintiff's symptom testimony; and (2) improperly rejecting the medical opinion provided by Dr. Cody Wasner, M.D. Pl.'s Opening Br. at 2-19. For the reasons discussed below, the Commissioner's decision denying Plaintiff's claim is reversed and remanded for further proceedings.

I.      **Subjective Symptom Testimony**

Plaintiff first asserts that the ALJ improperly rejected his subjective symptom testimony. Pl.'s Opening Br. at 2. This Court agrees.

A.      **Legal Standards**

The ALJ is responsible for evaluating subjective symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is

not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that

it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.        Plaintiff's Testimony

At the hearing, Plaintiff testified that his condition worsened in 2017 and 2018. Plaintiff

explained that he is in the advanced stages of ankylosing spondylitis, and it is "extraordinarily

painful." Tr. 64. He explained that he experienced "flare-ups" that "would potentially leave

[him] bedridden for days . . . sometimes a week at a time." Tr. 62. Plaintiff testified that both the

duration and frequency of the flare-ups increased. Tr. 62-63. Plaintiff explained that during the

flare-ups he "can do nothing other than just kind of sleep, meditate, pray and hope that the flare-

up goes away, and that [he can] regain some function or mobility again." Tr. 65.

Plaintiff also provided written testimony by completing a function report. Plaintiff

indicated that he had an array of mobility limitations due to pain in his neck, back, hips,

shoulders, hands, feet, and tailbone. Tr. 240. Plaintiff explained that he experienced frequent

muscle spasms and "crippling hip and back pain" and that "basic hygiene and self-care needs

[were] difficult to perform and require[d] special assistance and equipment [sic]." *Id.* For

example, Plaintiff stated he needs support to get into the shower and cannot shave his head due

to pain and a limited range of motion in his shoulders. Tr. 241. Plaintiff reported that he requires

a bidet toilet to help with his hygiene due his musculoskeletal limitations. *Id.* Plaintiff stated that

he requires opportunities to "rotate between standing, kneeling, sitting, or a laying down

position[.]" Tr. 240. Plaintiff reported it is "very difficult, and sometimes impossible to put on

socks and shoes." Tr. 241. His wife and parents typically prepare meals for him, and his wife

grocery shops for him. Tr. 241, 243. Plaintiff explained that his ability to perform household

chores varied depending on his pain levels. Tr. 242. Plaintiff reported that he used to have many

hobbies including weightlifting, hiking, roller-skating, kayaking, and playing guitar, but

explained that he has not been able to do these activities for several years due to his mobility

issues and pain. Tr. 244. Plaintiff no longer socialized. *Id.* Plaintiff explained that "[d]ue to

constant back and hip pain, [he could not] be certain to have an ability to stand or walk any

length [sic] of distance, on any given day" and "[he could not] sit for any length of time without

tailbone pain." Tr. 245.

The ALJ determined that his medically determinable impairments could reasonably be

expected to produce some degree of symptoms, but his "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision." Tr. 42.

However, the ALJ only discussed the objective medical evidence when discounting Plaintiff's

subjective symptom testimony. Tr. 42-43.[4]

### C.    Objective Medical Evidence

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by

evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161

(9th Cir. 2008); *see also Smartt*, 53 F4th at 498 ("When objective medical evidence in the record

is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as

undercutting such testimony."). While an ALJ may also consider the lack of corroborating

objective medical evidence as one factor in "determining the severity of the claimant's pain,"

---

[4] Plaintiff also asserts that the ALJ failed to consider his financial barriers to receiving carpal tunnel surgery when he concluded that Plaintiffs "impairment and functioning will improve following surgery." Tr. 43; *see Orn*, 495, F.3d at 638 (explaining that the ALJ cannot reject a claimant's testimony when his failure to obtain treatment is secondary to lack of funds or another "good reason"). The Commissioner appears to concede this issue. Def.'s Resp. Br. at 6.

PAGE 8 – OPINION AND ORDER

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

Here, the ALJ erred by rejecting Plaintiff's subjective symptom testimony based solely on a lack of corroborating objective medical evidence, and by merely summarizing the objective medical evidence. Tr. 42-43. Indeed, the ALJ specifically rejected Plaintiff's statements regarding his limitations as "inconsistent *because they are not supported by* the objective medical evidence or the claimant's treatment records." Tr. At 42 (emphasis added). This basis for rejecting Plaintiff's testimony was improper. *See Rollins*, 261 F.3d at 857 (subjective symptom testimony may not be wholly rejected based on a lack of corroborating objective medical evidence, medical evidence).

Moreover, the ALJ failed to link the particular parts of the record supporting he found non-credible to the parts of the record supporting his non-disability determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (an ALJ must "link" the testimony they find not credible "to the particular parts of the record supporting [their] non-credibility determination"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (an "ALJ must identify the testimony that was not credible, and specify what evidence

undermines the claimant's complaints") (citation and quotations omitted). Although there may have been substantial evidence in the record for the ALJ to reject portions of Plaintiff's testimony based on the objective medical evidence, *see Carmickle*, 533 F.3d at 1161, the ALJ failed to link that evidence with the specific testimony he rejected. The ALJ's "relatively detailed overview of [Plaintiff's] medical history, providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (citations omitted).

In sum, the ALJ's rejection of Plaintiff's subjective symptom testimony based on the objective medical evidence was not supported by specific, clear and convincing reasons.[5]

## II.     Medical Opinion Evidence

Plaintiff argues the ALJ improperly rejected the medical opinion given by Dr. Wasner without providing legally adequate reasons for doing so. Pl.'s Opening Br. at 10. This Court agrees.

### A.     Standard of Review.

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan

---

[5] Plaintiff also argues that the ALJ erred in failing to address his subjective complaints regarding concentration and focus. Pl.'s Opening Br. at 9-10. The Commissioner asserts that those complaints were related to his pain, which the ALJ properly rejected based on the lack of objective medical evidence. Def.'s Resp. Br. at 7. Because the ALJ failed to link the objective medical evidence to the specific testimony that was rejected, this Court cannot resolve whether the ALJ actually considered those complaints. Regardless, on remand, the ALJ will consider whether Plaintiff's complaints regarding concentration and focus are inconsistent with specific medical evidence.

18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

inconsistent without providing an explanation supported by substantial evidence.").

> **B.    Analysis**

Dr. Wasner, Plaintiff's rheumatologist, provided several written statements and a treating

source statement. Tr. 444, 616, 628, 651. Dr. Wasner stated that he had been treating Plaintiff

since January 2011 and saw him about four to six times a year. Tr. 444, 628. In his written

statement from June 2022, Dr. Wasner explained that

> Medications can treat symptoms, but this disease can become debilitating after
> time, and this is the case with [Plaintiff]. His symptoms have worsened to the point
> that he is unable to complete a full day without severe back pain, unable to sit for
> long periods of time, has to lay flat on his back for hours in order for him to recover
> from a workday. He has to elevate his legs to help with the pain and swelling as
> well. He had decreased range of motion and weakness and is unable to lift any
> weigh even [ten pounds]. We have tried several medications and [p]ain
> management over the years, but despite treatment he still has limitations.

Tr. 444.

In his treating source statement, Dr. Wasner reported that Plaintiff was diagnosed with

ankylosing spondylitis which "is an autoimmune disease that can be treated, but not cured." Tr.

628. Dr. Wasner indicated that Plaintiff's symptoms included back pain, a decreased range of

motion, and increased joint pain in his lower back, neck, and shoulders. Tr. 629. Dr. Wasner

assessed very significant limitations indicating that Plaintiff could sit for forty-five minutes at a

time and stand for thirty minutes at a time. Tr. 630. Dr. Wasner also opined that Plaintiff could

sit for one hour and stand for one hour total per workday. *Id.* Dr. Wasner explained that Plaintiff

is unable to sit or stand for long periods of time, and that Plaintiff needs thirty minutes of shifting

positions before he can sit comfortably. *Id.* Dr. Wasner also indicated that Plaintiff cannot sit

without a cushion. *Id.* Dr. Wasner indicated that Plaintiff needs to lie down for fifteen to thirty

minutes at a time, four to five times per day. *Id.* Dr. Wasner explained Plaintiff's pain

PAGE 12 – OPINION AND ORDER

management history and stated Plaintiff had tried many medications including Sulfasalazine,

Humira, Prednisone, although none were helpful. *Id.* Dr. Wasner also stated that these

medications caused sleep problems and "stomach intestinal issues[.]" *Id.* Dr. Wasner opined that

Plaintiff requires breaks after using his hands to perform handling or fingering activities. Tr. 631.

Dr. Wasner opined that Plaintiff needs to elevate his legs for fifteen to thirty minutes, four to five

times in an eight-hour workday. *Id.* Dr. Wasner opined that Plaintiff would be absent from work

four days per month. Tr. 632. Finally, Dr. Wasner indicated that all the opined limitations he

assessed had been present since he first started treating Plaintiff in 2011. *Id.*

Dr. Wasner provided an updated written statement in September 2022. Tr. 651. Dr.

Wasner reported that Plaintiff was frequently subject to episodes of debilitating pain and limited

mobility due to ankylosing spondylitis. *Id.* He opined that it would be harmful and difficult for

Plaintiff to perform physical activities such as standing, sitting, lifting, or bending on a repetitive

basis. *Id.* Dr. Wasner stated

> Guidelines should include not sitting or standing for more than a sustained period
> of [one] hour at a time and not bending over or lifting more than [ten pounds] at a
> tine with frequency. The use of a cane, crutches, walker, or wheelchair should
> also be readily accessible, along with ability to lay down and rest as needed.

Tr. 651.

Dr. Wasner provided an updated written statement in October 2023, where he reported

that Plaintiff was no longer on Humira. Tr. 616.

The ALJ found Dr. Wasner's opinions not persuasive. Tr. 43. First, the ALJ

acknowledged Dr. Wasner's written statement from June 2022 where Dr. Wasner wrote that

Plaintiff's "symptoms have worsened to the point that he is unable to complete a full day without

severe back pain, unable to sit for long periods of time, has to lay flat on his back for hours in

order for him to recover from a workday." Tr. 43 (quoting Tr. 444). The ALJ found this

statement unpersuasive "because it speaks to the ultimate issue of disability which is reserved to the commissioner." *Id.* However, the ALJ concluded that in so far as this statement includes opinions on Plaintiff's functional limitations, these limitations are not supported by the longitudinal medical evidence." *Id.* To support this conclusion, the ALJ explained that although Dr. Wasner states that Plaintiff must elevate his legs to help with pain and swelling, "there is no mention of this in his treatment records." *Id.* The ALJ also explained that Dr. Wasner opined that Plaintiff is unable to lift ten pounds due to his pain, but "his physical exams consistently show full (5/5) strength in the upper and lower extremities." Tr. 43-44 (citing Tr. 363, 480-85, 554, 568).

Next, the ALJ acknowledged Dr. Wasner's treating source statement, which he also found unpersuasive. Tr. 44. The ALJ explained that Dr. Wasner's opinion is not supported by the objective medical evidence, including the physical exams performed by consultative examiner Dr. Leinenbach and neurosurgeon Dr. Sweeney. *Id.* (citing Tr. 480-85, 567-69). Making no citations to the record, the ALJ also concluded that Dr. Wassner's opinions in the treating source statement are not consistent with Plaintiff's medical records showing improved function with steroid medication and hip injections. *Id.* The ALJ also discussed how Plaintiff elected to not take biologic medication and instead takes Lyrica on an as needed basis. *Id.* (citing Tr. 626).

The ALJ's cursory analysis of Dr. Wasner's opinion is not supported by substantial evidence. The ALJ mischaracterized the objective medical evidence regarding his treatment history. Regarding his steroid injection treatment, Plaintiff experienced only brief temporary improvement with Prednisone, and his symptoms ultimately returned. Tr. 460. Regarding biologic medication, Plaintiff experienced a significant worsening on symptoms while taking Enbrel. Tr. 450. Treatment records show that when on Enbrel, Plaintiff experienced abdominal

pain, musculoskeletal pain at "all joints[,]" and was bedridden for eight days. *Id.* He had

lingering fatigue, and his fingers ached with his grip progressively worsening. *Id.* Ultimately

Plaintiff stopped taking Enbrel, increased his Prednisone, and was prescribed Humira. Tr. 451.

However, Plaintiff's conditions did not improve with Humira. Tr. 447. Dr. Wasner observed that

Plaintiff had a reduced bilateral grip strength, costochondral tenderness, and limited range of

motion of the shoulders and hips. Tr. 448. Dr. Wasner increased Plaintiff's Humira treatment to

weekly, and continued Prednisone treatment. *Id.* While Plaintiff did report a few "windows of

relief with weekly Humira treatments in August 2022, he did continue to have very serious

flaring episodes that caused him to spend five days in bed. Tr. 466.

       The ALJ's conclusion that Dr. Wasner's opinion is not consistent with Plaintiff's medical

records is also not supported by substantial evidence. The ALJ discussed the objective medical

evidence in a conclusory manner, with almost no citations to the record besides the consultative

examinations. Tr. 44. These cursory citation and conclusory statements do not specify the

objective evidence that is inconsistent with Dr. Wasner's opinion. Thus, the ALJ's assessment of

Dr. Wasner's opinion not sufficiently specific to allow this Court to conclude that the

ALJ rejected the opinion on permissible grounds. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th

Cir. 1991).

## III.    Remedy

       Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210.

Although a court should generally remand to the agency for additional investigation or

explanation, a court has discretion to remand for immediate payment of benefits. *Treichler*, 775

F.3d at 1099-1100. As relevant here, the Court may only remand for payment of benefits where

"the record has been fully developed and further administrative proceedings would serve no

PAGE 15 – OPINION AND ORDER

useful purpose." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). In conducting this

analysis, the district court first determines whether the ALJ made a legal error and then reviews

the record as a whole to determine whether the record is fully developed, the record is free from

conflicts and ambiguities, and whether there is any useful purpose in further proceedings.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

Plaintiff asks this Court "to exercise its discretion to credit-as-true the improperly

rejected evidence . . . and remand the case for an award of benefits or, in the alternative to

remand for further proceedings." Pl.'s Opening Br. at 19. In his reply, Plaintiff illustrates the

credit as true standard, but does not provide any analysis as to why Plaintiff's subjective

symptom testimony and Dr. Whiteley's medical opinion should be credited as true. Pl.'s Reply

Br. at 4-7. This Court need not engage in a detailed discussion of the credit-as-true standard

because "Plaintiff has not meaningfully argued that remand for an immediate award of benefits is

appropriate here." *Marshall M. v. Comm'r Soc. Sec. Admin.*, No. 3:23-CV-00039-SB, 2024 WL

2317386, at *9 (D. Or. May 22, 2024); *see Alicia D. v. Kijakazi*, No. 3:20-cv-01222-SB, 2022

WL 891786, at *11 (D. Or. Mar. 3, 2022) ("The Court must remand this case for further

proceedings because Plaintiff has not met the credit-as-true standard (as she appears to

acknowledge by not briefing the issue)."), *findings and recommendation adopted*, 2022 WL

888297 (D. Or. Mar. 25, 2022). Instead, this Court concludes there are ambiguities in the record

concerning Plaintiff's limitations, and further proceedings would serve a useful purpose.

On remand, the ALJ must (1) accept Dr. Wasner's opinion or provide legally sufficient

reasons for rejecting them, (2) accept Plaintiff's testimony or provide legally sufficient reasons

for rejecting it, (3) review any new evidence, and (4) as necessary, reweigh the medical and other

evidence of record, reformulate Plaintiff's RFC, and obtain additional VE testimony.

PAGE 16 – OPINION AND ORDER

///

///

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court

REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 3rd day of September, 2025.

_____

ANDREW HALLMAN
United States Magistrate Judge